IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 1:19-cv-00691-LTB

DEBORAH A. DEGRADO,

      Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

      Defendant.[1]

---

ORDER

---

Plaintiff appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401–433. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist me in the determination of this appeal. After consideration of the parties' briefs, as well as the administrative record, I REVERSE and REMAND the Commissioner's final order for further proceedings.

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d). Section 205(g) of the Social Security Act states that an action survives regardless of any change in the person occupying the office of Commissioner of Social Security. 42 U.S.C. § 405(g).

1

## I. STATEMENT OF THE CASE

Plaintiff seeks judicial review of SSA's decision denying her application for disability insurance benefits. Compl., ECF No. 1. Plaintiff filed this application in January 2016 alleging that her disability began on October 15, 2015. [Administrative Record ("AR") 159, 233]

SSA initially denied her application in June 2016. [AR 97] The Administrative Law Judge ("ALJ") conducted an evidentiary hearing on February 22, 2018 and issued a written ruling on May 16, 2018. [AR 10–79] In that ruling, the ALJ denied Plaintiff's application on the basis that she was not disabled because considering her age, education, and work experience, she had the residual functional capacity to perform jobs that existed in significant numbers in the national economy. [AR 23] The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's determination, making SSA's denial final for the purpose of judicial review. [AR 1–5, 158]; *see* 20 C.F.R. §404.981. Plaintiff timely filed her Complaint with this court seeking review of SSA's final decision. ECF No. 1.

## II. LEGAL STANDARDS

### A. SSA's Five-Step Process for Determining Disability

A claimant is "disabled" under Title II of the Social Security Act if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not

less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). SSA has established a five-step sequential evaluation for determining whether a claimant is disabled and thus entitled to benefits. 20 C.F.R. § 404.1520.

At step one, SSA asks whether the claimant is presently engaged in "substantial gainful activity." If she is, benefits are denied and the inquiry stops. 20 C.F.R. § 404.1520(b). At step two, SSA asks whether the claimant has a "severe impairment"—that is, an impairment or combination of impairments that "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If she does not, benefits are denied and the inquiry stops. If she does, SSA moves on to step three, where it determines whether the claimant's impairments "meet or equal" one of the "listed impairments"—impairments so severe that SSA has determined that a claimant who has them is conclusively disabled without regard to the claimant's age, education, or work experience. 20 C.F.R. § 404.1520(d). If not, SSA goes to step four.

At step four, SSA determines the claimant's residual functional capacity ("RFC")—that is, what she is still able to do despite her impairments—and asks whether the claimant can do any of her "past relevant work" given that RFC. 20 C.F.R. § 404.1520(e). If not, SSA goes to the fifth and final step, where it must show that the claimant's RFC allows her to do other work in the national economy in view of her age, education, and work experience. 20 C.F.R. § 404.1520(g). At this step, SSA's "grid rules" may mandate a finding of disabled or not disabled without further analysis based on the claimant's age, education, and work experience. 20

3

C.F.R. Pt. 404, Subpt. P, App. 2. The claimant has "the burden of establishing a prima facie case of disability at steps one through four." *Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir. 2003).

### B. Standard of Review

My review concerns only whether SSA's factual findings are supported by substantial evidence and whether the correct legal standards were applied. *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015). With regard to the law, reversal may be appropriate when SSA fails to apply proper legal standards. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). With regard to the evidence, I must "determine whether the findings of fact . . . are based upon substantial evidence, and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). The record must demonstrate that the ALJ considered all the evidence, but an ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). I examine the record as a whole and may not reweigh the evidence or substitute my judgment for that of the ALJ. *Flaherty v. Astrue*, 515 F.3d at 1070.

## III. THE ALJ'S RULING

In her ruling, the ALJ followed the five-step analysis outlined above. The ALJ concluded under the first step that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 15, 2015. [AR 15] Under step two, the ALJ determined that Plaintiff had the "following severe impairments: popliteal artery aneurysm and repair surgery, chronic peripheral venous insufficiency with left leg pain due to injury to left tibial nerve, cervical and lumbar degenerative disc disease, fibromyalgia and an unspecified mood disorder . . . ." [AR 16]

The ALJ concluded under step three that the enumerated severe impairments did not meet or medically equal an impairment in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listing"). [AR 17] The ALJ found that Plaintiff had the RFC to perform light work except that she is limited in that she needed "a sit-stand option that allows her to shift positions every thirty minutes for one to two minutes, so long as not be off task." [AR 18] Further, the ALJ wrote that Plaintiff could "never climb ladders, ropes or scaffolding; can occasionally climb ramps and stairs, stoop, crouch, kneel and crawl. The claimant should never be exposed to excessive vibrations, moving mechanical parts and unprotected heights. The claimant's work is limited to that which can be learned in up to six months." [*Id.*]

The ALJ found that Plaintiff was unable to perform past relevant work, fulfilling step four. [AR 22] In the fifth and final step, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform.

[AR 23] The ALJ supported her decision based in part by the testimony of the vocational expert and related hypotheticals, and found that Plaintiff could be a cashier, cleaner, or convenience store attendant. [AR 23–24] Thus, the ALJ concluded that Plaintiff was not disabled. [AR 24]

### IV. ISSUES ON APPEAL

In appealing the ALJ's decision, Plaintiff argues that the ALJ did not have valid reasons for: (1) discounting the opinions of her treating physicians; and (2) assigning greater weight to the state agency psychological reviewer than she assigned to her treating psychologist's opinion.

In formulating a claimant's RFC, "the ALJ must give consideration to all the medical opinions in the record." *Paulsen v. Colvin*, 665 F. App'x 660, 664 (10th Cir. 2016) (citing 20 C.F.R. § 404.1527(c)) (unpublished). The ALJ is not required to discuss every piece of evidence but must discuss the evidence supporting his decision and "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d at 1009–10.

"A treating-source opinion concerning the nature and severity of a claimant's impairment is entitled to controlling weight provided it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" *Paulsen v. Colvin*, 665 F. App'x at 664 (quoting 20 C.F.R. § 404.1527(c)(2)) (alterations omitted). The weight the ALJ assigns to a treating physician "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (Jul. 2, 1996) ("SSR 96-2p").

If the ALJ declines to give a treating-source opinion controlling weight, he must then determine what weight to give the opinion using the factors in 20 C.F.R. § 404.1527(c)(2)(i), (c)(2)(ii), and (c)(3) through (c)(6). *Paulsen v. Colvin*, 665 F. App'x at 664. All these factors must be weighed by the ALJ in determining the treating-source opinion's weight. SSR 96–2p, at *4. But the ALJ need not explicitly discuss each factor. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the [20 C.F.R. § 404.1527(c)] factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review."). "An ALJ cannot reject a treating source's opinion without identifying 'specific, legitimate reasons.'" *Schwarz v. Barnhart*, 70 F. App'x 512, 515 (10th Cir. 2003) (citing cases) (unpublished).

### A. The ALJ erred in the weight she assigned to treating physicians' opinions.

In 2016, treating rheumatologist Patrick Timms, M.D. provided an opinion of Plaintiff's abilities. [AR 1262–64] Dr. Timms wrote that he had treated Plaintiff for lumbar spondylosis and fibromyalgia.[AR 1262] He opined that in an eight-hour work day, she should could lift 10 pounds for up to one-third of the day; could sit 30 minutes at one time and for four hours total; could stand 15 minutes at one time and for two hours total; and that she needed to lay down for 30 minutes every two hours. [AR 1262–64] He noted that Plaintiff could stoop or squat less than ten repetitions per day and never kneel or crawl. [AR 1263] He limited her reaching,

7

handling, and fingering on her right side to up to one hour per day and less than ten repetitions per day on her left. [*Id.*]

In 2017, treating neurologist Richard Gamuac, M.D. provided an opinion of Plaintiff's abilities, noting that Plaintiff had a seizure disorder with complex partial seizures and that her seizures occurred one-to-two times per week despite medication. [AR 1265–66] Dr. Gamuac added that Plaintiff's seizures caused a loss of conscious, alterations of awareness, and postictal manifestations of unconventional behavior. [AR 1266] He continued that Plaintiff would be non-functional for 24 hours after a seizure. [*Id.*]

In her decision, the ALJ summarized the two doctors' opinions and gave them little weight:

> Two treating physicians opined that the claimant is unable to maintain work-related activities for a full eight-hour workday due to her physical conditions. However, the treatment record does not support such severe limitations. For instance, a relative[ly] recent treatment record from July 2017 noted that the claimant had a normal ambulatory station and gait. Additionally, an objective examination performed in October 2017 revealed her deep tendon reflexes were 2+ and equally symmetric and that her sensory, motor and cerebellar functions were normal. Therefore, the undersigned gives these opinions little weight.

[AR 21 (internal citations omitted)] Earlier in her opinion, the ALJ mentioned that the "objective medical evidence does not support limitations greater than in the [RFC]." [AR 19] She noted that Dr. Timms found Plaintiff to have fibromyalgia, but she then pointed to numerous medical records showing no discernable discomfort. [*Id.*] She noted that there were several inconsistencies regarding Plaintiff's allegations of seizures, in that Plaintiff had reported or testified that she was in graduate school, volunteered, traveled, and had been cleared to work after the

8

alleged onset date of disability. [AR 20]

Plaintiff claims that the ALJ did not provide sufficient reasons for rejecting the doctors' opinions. Pl.'s Br., ECF No. 15 at 5. She argues that the ALJ mischaracterized the doctors' reports. *Id.* She contends that Dr. Timms' report was more nuanced than "the general idea that [Plaintiff] is unable to work a full eight-hour day." *Id.* at 6. She argues that Dr. Gamuac's opinion would lead Plaintiff to meeting the requirement of the impairment in Listing 11.02. *Id.* She contends that the support cited to by the ALJ did not contradict the doctors' opinions but was merely unsupportive. *Id.* at 7. Defendant responds that because the ALJ discussed earlier in her decision that physical examination findings were essentially normal throughout the record, the ALJ had a sound basis to give little weight to the doctors' opinions. Def.'s Resp., ECF No. 16 at 8.

I conclude that that the ALJ did not provide specific, legitimate reasons for affording the doctors' opinions little weight. The ALJ wrote that the treatment record did not support the limitations noted by the doctors. [AR 21] But the ALJ did not sufficiently explain how the records to which she cited were inconsistent with the doctors' opinions. Further, the ALJ relied on a record that read that Plaintiff "had a normal ambulatory station and gait." [AR 21, 1186] In the same sentence of that record, it is noted that Plaintiff had "balance difficulty with heel walking, toe walking and tandem gait." [AR 1186] "It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).

9

It is even less clear how these records relate to Dr. Gamuac's opinion, which pertained to Plaintiff's seizures. [AR 1265–66]

This is not a situation where a summary of objective medical evidence from earlier in the decision should have been incorporated into the ALJ's analysis of the doctors' opinions. *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) (The court understood "the ALJ's reference to 'objective medical evidence' to mean the same evidence from the same exhibits he relied on as being inconsistent with the similar restrictions proposed by [another doctor].") (unpublished). As such, the ALJ must reevaluate the weight she assigned to Drs. Timms' and Gamuac's opinions. She must more thoroughly explain how the medical record supports the weight she assigns to the doctors' opinions.

### B. The ALJ erred in the weight she assigned to the treating psychologist's opinion.

In 2016, treating psychologist Brenda Baker, Ph.D. provided a mental RFC evaluation. [AR 1258] This evaluation analyzed Plaintiff's limitations in her understanding and memory, sustained concentration and persistence, social interaction, and adaptation. [AR 1258–59] Dr. Baker estimated that Plaintiff would be off task thirty percent of the workweek and would miss three or more days per month based on her mental impairments. [AR 1259] In 2017, Dr. Baker provided a treatment report for Plaintiff. She noted that Plaintiff entered therapy in 2011 to work on stress management and trauma issues and noted Plaintiff's diagnoses of posttraumatic stress disorder, generalized anxiety disorder, and persistent depressive disorder. [AR 1145] Finally, Dr. Baker noted Plaintiff's treatment goals

and listed her functional limitations:

> [Plaintiff] has reported the following functional limitations: focus and concentration issues, difficulty making decisions, sleep disturbance/insomnia, easily fatigued, irritation, persistent negative distortion in cognitions, diminished interest in activities, feelings of detachment to others, inability to remember, persistent worry and anxiety, and feelings of hopelessness.

[*Id.*]

In her decision, the ALJ summarized Dr. Baker's evaluation and report. [AR 21] But the ALJ gave Dr. Baker's opinions little weight because "the objective findings in the record noted that the claimant had a normal attention span and concentration . . ." and there were no treatment records submitted by Dr. Baker. [*Id.*]

Plaintiff argues that the ALJ did not have valid reasons for giving greater weight to the state agency psychological reviewer than to Dr. Baker. ECF No. 15 at 13. She argues that Dr. Baker's opinion should have been analyzed differently because she was a treating medical source. *Id.* at 13–15. Further, she argues that the ALJ incompletely analyzed medical records on which the ALJ based her decision. *Id.* at 15–16. Finally, she claims that a lack of treatment records does not invalidate a physician's opinion. *Id.* at 17. Defendant responds that the ALJ appropriately found that Dr. Baker's opinion was inconsistent with the record as a whole. ECF No. 16 at 10.

I conclude that the ALJ erred in her analysis of Dr. Baker's opinion. The issues are similar to those concerning Drs. Timms' and Gamuac's opinions. Defendant argues that the ALJ found that "Dr. Baker's opinion was inconsistent

11

with the record as a whole, which contained essentially normal mental status evaluation findings[].” ECF No. 16 at 10. But the ALJ merely stated that "the objective findings in the record noted that the claimant had a normal attention span and concentration . . . .” Then, the ALJ cited to a specific treatment note where a doctor indeed noted a normal attention span and concentration. [AR 1031] However, in that same note, the doctor wrote that Plaintiff was not "oriented to time, place, person, or situation." [*Id.*] The doctor noted anhedonia, anxiety, fearfulness, and mood swings. [*Id.*] It was error for the ALJ to choose this treatment note as an example that Plaintiff had a normal attention span and concentration, because she did not mention conflicting evidence. *Hardman v. Barnhart*, 362 F.3d at 681. While the ALJ also relied on a lack of supporting treatment notes, as she may, that reliance did not sufficiently show that her decision was based upon substantial evidence. As such, the ALJ must reevaluate and provide a more thorough analysis of the weight given to Dr. Baker's opinion.

## V. CONCLUSION

Accordingly, SSA's decision is REVERSED, and this case is REMANDED for proceedings consistent with this opinion. The ALJ must: (1) reevaluate the weight she assigns to Drs. Timms' and Gamuac's opinions and more thoroughly explain how the medical record supports the weight she assigned to the doctors' opinions; and (2) reevaluate and provide a more thorough analysis of the weight given to Dr. Baker's opinion.

Dated: August 19, 2019 in Denver, Colorado.

                                        BY THE COURT:

                                        <u>s/Lewis T. Babcock</u>
                                        LEWIS T. BABCOCK, JUDGE